UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVDSION

———————————————————— x
                                :

WADDELL WILLIAMS, on behalf of himself :
and others similarly situated,            :    Case No. 8:17-CV-01971-T-27AAS
                                :

                Plaintiff,    :
                                :

      vs.                          :
                                :

BLUESTEM BRANDS, INC.            :
                                :

                Defendant.    :
                                :
———————————————————— x

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**

**Introduction**

For years, defendants in Telephone Consumer Protection Act ("TCPA") matters filed motions to stay cases pending the resolution of various petitions to the FCC and related appeals of those petitions. For a while those motions gained traction with some district courts, including this one, as judges awaited guidance from the FCC regarding certain developing legal issues. But in July 2015 the FCC issued authoritative guidance on a number of open questions under the TCPA. And while the FCC's ruling is currently on appeal before the D.C. Circuit in *ACA Int'l., et al. v. FCC & USA*, No. 15-1211 ("*ACA Int'l*"), courts in this district now view stay requests pending a decision in *ACA Int'l* with disfavor. Indeed, Bluestem Brands, Inc. ("Defendant") does not cite any decisions from this district in 2017 (nor is Waddell Williams ("Plaintiff") aware of any) staying a TCPA matter based on *ACA Int'l*. At the same time, judges in this district issued six opinions denying stays premised on *ACA Int'l*:

- *Garmendiz v. Capio Partners, LLC*, No. 8:17-cv-00987-EAK-AAS, 2017 WL 3208621, at *3 (M.D. Fla. July 25, 2017) (Kovachevich, J.) ("In every case, there is always the possibility that the law will change in a manner that impacts the viability of the parties'

1

claims and defenses. Far from simplifying the Court's analysis, granting a stay under these circumstances would set unwise precedent that every time a controversial issue is raised on appeal, all related or similar cases must be halted pending the appellate court's ruling. This Court is equally unconvinced that the stay would meaningfully conserve costs for the parties or the Court. The parties will still have to participate in discovery regarding whether the D.C. Circuit Court of Appeals' ruling is directly applicable to this case.");

- *Thomas v. Ocwen Loan Servicing, LLC*, No. 5:17-CV-73-OC-30PRL, 2017 WL 2426846, at *2 (M.D. Fla. June 5, 2017) (Moody, J.) ("Consistent with this Court's orders in several other cases, the Court concludes a stay under these circumstances will not promote judicial economy, but it will harm Plaintiff. Staying these proceedings will require Plaintiff to stand aside for an indefinite period of time, waiting first for the D.C. Circuit to make its ruling and then (possibly) for the Supreme Court to review that ruling. There is no compelling reason to require this of Plaintiff. The stay requested by Defendant is immoderate.");

- *Zuluaga v. Ocwen Loan Servicing, LLC*, No. 617CV335ORL37GJK, 2017 WL 1684127, at *2 (M.D. Fla. May 3, 2017) ("Dalton Jr., J.) ("Irrespective of the deference the D.C. Circuit's decision in *ACA Int'l* may or may not be due, the Court declines to stay the instant proceeding indefinitely pending the issuance of that decision.");

- *I.C. ex rel. Cochrane v. Am. Credit Acceptance, LLC*, No. 616CV1479ORL37GJK, 2017 WL 1507184, at *1 (M.D. Fla. Apr. 25, 2017) (Dalton, Jr., J.) ("[A]s Defendant concedes, the Undersigned has previously declined to stay similar litigation on the ground that *ACA Int'l* will be merely persuasive authority within the Eleventh Circuit. *Adamo v. Synchrony Bank*, No. 6:16–cv–530–Orl–37GJK, 2016 WL 3621129, at *1 (M.D. Fla. July 6, 2016). . . . Hence, in the exercise of its discretion, the Court declines to stay the instant proceeding.");

- *Owens-Benniefield v. Nationstar Mortg. LLC*, No. 8:17-CV-540-T-33TGW, 2017 WL 1426720, at *2-*3 (M.D. Fla. Apr. 21, 2017) (Covington, J.) ("Here, the decision of ACA International will not be dispositive. *** Also weighing against a stay is the uncertainty of when the D.C. Circuit will rule. . . . Furthermore, there is always the possibility that the D.C. Circuit's decision will be appealed to the Supreme Court, adding a further layer of indefinite—and perhaps lengthy—delay were a stay to be granted here. . . . Balancing these considerations, the Court determines that the TCPA claim should not be stayed pending decision of ACA International.");

- *Terec v. Reg'l Acceptance Corp.*, No. 8:16-CV-2615-T-30MAP, 2017 WL 662181, at *2 (M.D. Fla. Feb. 17, 2017) (Moody, J.) ("A stay under these circumstances will not promote judicial economy, but it will harm Plaintiff. Staying these proceedings will require Plaintiff to stand aside for an indefinite period of time, waiting first for the D.C. Circuit to make its ruling and then (possibly) for the Supreme Court to review that ruling. There is no compelling reason to require this of Plaintiff. The stay requested by Defendant is immoderate.").

And even before 2017, courts in this district were wary of indefinite stays pending the outcome of *ACA Int'l. See, e.g.*, *Sliwa v. Bright House Networks, LLC*, No. 16-235, 2016 WL 3901378, at *4 (M.D. Fla. July 19, 2016) (Steele, J.) ("Staying this case because the [D.C.] Circuit Court may conclude that [the] FCC incorrectly interpreted the TCPA is the opposite of affording the Final Order deference. Granting a stay premised on the contention that the FCC got it wrong could, in fact, amount to a constructive "refus[al] to enforce an FCC interpretation"—an action this Court is expressly prohibited from taking—and a "violat[ion of] the Hobbs Act's prohibition on district court review of FCC orders."); *Adamo v. Synchrony Bank*, No. 616CV530ORL37GKG, 2016 WL3621129, at *2 (M.D. Fla. July 6, 2016) (denying stay request); *James v. JPMorgan Chase Bank, N.A.*, No. 15-02424, ECF No. 44 (M.D. Fla. Apr. 7, 2016) (Merryday, C.J.) (same); *Rodriguez v. DFS Servs., LLC*, No. 8:15-CV-2601-T-30TBM, 2016 WL 369052, at *3 (M.D. Fla. Feb. 1, 2016) (Moody, J.) ("The challenges before the D.C. Circuit will therefore have no effect on the viability of Rodriguez's lawsuit as pled in her complaint. . . . A stay under these conditions does not promote judicial economy."); *Coniglio v. Iqual Corp.*, No. 8:15-CV-2406-T-33AEP, 2015 WL 8521288, at *1 (M.D. Fla. Dec. 3, 2015) (Covington, J.) (denying stay request).

Considering this, and given its history of TCPA litigation, Defendant's request for a "short pause" here, *see* ECF No. 8 at 8, rings particularly hollow. While Defendant points to two other class actions against it alleging violations of the TCPA that were stayed by courts outside this circuit (and in circuits that, unlike the Eleventh Circuit, have not ruled on the "called party" issue), *see* ECF No. 8 at 9-10, these decisions dramatically undercut Defendant's argument that "[a] stay pending *ACA* likely would be brief and so would cause no hardship to Plaintiff." *Id*. at 8. In fact, one of these cases has been stayed since August 2016—well over a year, and thus hardly a "short pause," *see id*.—and the other since February 2017—nearly a year. As those stays have been

anything but "brief," *see id*., they underscore why a stay here is unwarranted.[1] *Compare id. with Garmendiz*, 2017 WL 3208621, at *2 ("Granting a stay now, under these circumstances, will be an immoderate stay because of the uncertainty regarding when the D.C. Circuit Court of Appeals will issue a final determination. Moreover, the potential for either party, in the D.C. Circuit Court of Appeals' case, to request a review by the circuit court *en banc* and/or seek a writ of *certiorari* to the United States Supreme Court will further delay any concrete resolution to the issue.").

For the same reasons courts in this district denied recent requests to stay TCPA actions pending a decision in *ACA Int'l*, this Court should deny Defendant's motion.

### Statement of Relevant Facts

In an effort to contact "Betty Smith," Defendant placed numerous calls to Plaintiff's cellular telephone number. *See* Complaint, ECF No. 1, ¶ 12; Defendant's Answer and Affirmative Defenses, ECF No. 7, ¶¶ 12, 16. Defendant did so on, among other dates, May 26, 2017, July 1, 2017, and July 3, 2017. ECF No. 1, ¶ 13; ECF No. 7, ¶ 13. Defendant placed its calls to Plaintiff's cellular telephone number from (844) 349-8918 and (844) 349-6203—telephone numbers assigned to Defendant's Fingerhut brand. ECF No. 1, ¶ 15; ECF No. 7, ¶ 15. Defendant admits that, "on occasion, it places calls with technology that meets the Federal Communications Commission's current interpretation of what constitutes an automatic telephone dialing system for purposes of the Telephone Consumer Protection Act." ECF No. 7, ¶¶ 14, 20-23.

On several occasions, Plaintiff answered Defendant's calls. ECF No. 1, ¶ 17. During those occasions, Plaintiff made clear that Defendant was calling the wrong person and should stop calling. *Id*.

---

[1]     To be clear, neither Plaintiff nor his counsel have any interest in, or relationship to, the other TCPA cases pending against Defendant.

Plaintiff does not know, and has no known connection to, the intended recipient of Defendant's calls. *Id.*, ¶ 25. Plaintiff is not, nor was, one of Defendant's customers. *Id.*, ¶ 27. Plaintiff does not have, nor did he ever have, a business relationship with Defendant. *Id.* And Plaintiff did not provide Defendant with his cellular telephone number. *Id.*, ¶ 26.

## Standard

The Supreme Court, through it seminal decision in *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), recognized that a district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[2] But "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55.

In this regard, *Landis* demands that when a party requests a stay pending the outcome of litigation in a separate action—as Defendant requests here—that litigant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255. And "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.*

Defendant, therefore, bears the burden of justifying its request that this Court compel Plaintiff to stand aside pending a decision in *ACA Int'l*—a matter unrelated to this case. And as the Eleventh Circuit explained, "although a motion to stay is directed to the district court's sound discretion, a stay order must be evaluated in light of the court's strong obligation not to dismiss or

---

[2]     Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

postpone the federal claim in the absence of exceptional circumstances." *Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1525 (11th Cir. 1984).

**Argument**

**I.      Staying this case to await a decision from a court in an unrelated matter as to the validity of a current FCC regulation runs afoul of the Hobbs Act's mandate that courts not refuse to enforce FCC interpretations as they exist and until they are upset.**

Defendant concedes that the FCC's 2015 Declaratory Ruling and Order ("2015 FCC Order") supports both Plaintiff's position that he is a "called party" as the TCPA uses the term, and that the system Defendant used to place calls to Plaintiff's cellular telephone number is an ATDS as the TCPA defines one. ECF No. 7, ¶¶ 14, 20-23; ECF No. 8 at 5-6. Nonetheless, Defendant argues that the FCC incorrectly answered the questions it now puts before this Court— whether a "narrower interpretation" of an ATDS is appropriate, and whether the unintended recipient of a call is the "called party" under the TCPA, ECF No. 8 at 1-2—and that this Court should accordingly stay this case to await a decision from a different court in an unrelated matter, which Defendant hopes will agree with its conclusion that the FCC simply got it wrong.

Defendant then suggests that the Hobbs Act supports its request for a stay. *See id*. at 6-7. Defendant is, however, mistaken, for at least two reasons. From the outset, the Hobbs Act mandates that this Court apply to this case the FCC's interpretations of the TCPA as they exist today. *See, e.g.*, *Morse v. Allied Interstate, LLC*, 65 F. Supp. 3d 407, 412 (M.D. Pa. 2014) ("Because the Hobbs Act prevents this Court from questioning the validity of the 2003 and 2008 FCC Orders, they will be applied."); *Murphy v. DCI Biologicals Orlando, LLC*, No. 12-1459, 2013 WL 6865772, at *6 (M.D. Fla. Dec. 31, 2013) ("This means that, if the Court determines the Hobbs Act to be applicable to this case, the Court is bound to apply the definition of 'express consent' from the 1992 FCC Order to this matter."), *aff'd*, 797 F.3d 1302 (11th Cir. 2015).

In other words, unless and until the 2015 FCC Order is upset, this Court must apply its reasoning to the issues in this case. And choosing to effectively ignore the 2015 FCC Order today, to await some future event that has yet to occur, runs afoul of the Hobbs Act's prohibition of refusing to enforce FCC interpretations:

> Staying this case because the [D.C.] Circuit Court may conclude that [the] FCC incorrectly interpreted the TCPA is the opposite of affording the Final Order deference. *Granting a stay premised on the contention that the FCC got it wrong could, in fact, amount to a constructive "refus[al] to enforce an FCC interpretation"—an action this Court is expressly prohibited from taking—and a "violat[ion of] the Hobbs Act's prohibition on district court review of FCC orders." Id.* This reason, the Court concludes, is alone sufficient to deny Bright House's Motion for Stay.

*Sliwa*, 2016 WL 3901378, at *4 (refusing to stay TCPA action).

Correspondingly, rather than support an indefinite stay of this case, the Hobbs Act militates against a stay for fear of denying the enforcement of relevant, binding authority—the 2015 FCC Order—in its current form.

As well, Defendant's contention that the Hobbs Act supports its request for a stay also fails because a decision in *ACA Int'l* will bind this Court only so far as the validity of the 2015 FCC Order. That is, while "[t]he Hobbs Act gives the courts of appeals exclusive jurisdiction to 'determine the validity of' all FCC final orders[,]" *Pac. Bell v. Pac–West Telecomm, Inc.*, 325 F.3d 1114, 1125 (9th Cir. 2003) (citing 28 U.S.C. § 2342(1)), courts remain free to interpret the language of the TCPA as they see fit, while maintaining deference to the FCC's ultimate rulemaking authority:

> The Hobbs Act, 28 U.S.C § 2342(1), and the Federal Communications Act, 47 U.S.C. § 402(a), operate together to restrict district courts from invalidating certain actions by the FCC. . . . Therefore, "[r]egardless of whether this FCC interpretation of the TCPA is entitled to *Chevron* deference, this Court lacks jurisdiction to review its validity." . . . Accordingly, the court accepts as valid the 2015 FCC Ruling as a "final order" for purposes of 28 U.S.C. § 2342(1) because it was the agency's final decision interpreting the "prior express consent" provision of the TCPA, and it determines legal rights and obligations. . . . *However, the matters of interpreting*

> *and applying the FCC's rulings remain within the province of the court. Sacco,*
> 2012 WL 6566681, at *9 n.8.

*Cartrette v. Time Warner Cable, Inc.*, 157 F. Supp. 3d 448, 452-53 (E.D.N.C. 2016).[3]

Here, Plaintiff does not ask this Court to rule on the validity of the 2015 FCC Order. Rather, he seeks relief for himself and the proposed class under the TCPA. So unless and until it is nullified, this Court must defer to the 2015 FCC Order as it stands, and rule accordingly. Thus, this Court need not, nor should, stay this case to await a potential change in controlling interpretation at some unknown point in the future. *See Garmendiz*, 2017 WL 3208621, at *3 ("In every case, there is always the possibility that the law will change in a manner that impacts the viability of the parties' claims and defenses. Far from simplifying the Court's analysis, granting a stay under these circumstances would set unwise precedent that every time a controversial issue is raised on appeal, all related or similar cases must be halted pending the appellate court's ruling.").

## II. Because a decision in *ACA Int'l* will not change settled law regarding both the "called party" and ATDS issues that Defendant raises, its request for a stay is unwarranted.

### A. The Eleventh Circuit has twice rejected Defendant's position regarding a "called party," and a decision in *ACA Int'l* will not affect this binding authority.

While repeatedly pointing to a pending appeal of the 2015 FCC Order—which it does not like—Defendant minimizes the fact that the Eleventh Circuit has twice addressed, and specifically

---

[3]     *See also Carlton v. Harris Chiropractic, Inc. v. PDR Network, LLC*, No. 15-14887, 2016 WL 5799301, at *3-*4 (S.D.W. Va. Sept. 30, 2016) ("The Hobbs Act does not require a federal court to adopt an FCC interpretation of the TCPA. The Hobbs Act vests exclusive jurisdiction to 'enjoin, set aside, suspend, or to determine the validity of all final orders of the [FCC]' in the Circuit Courts of Appeals. *Id.* Neither party in this case has challenged the validity of the FCC's interpretation of the TCPA. If they had, this Court would lack the jurisdiction to decide the case. *See FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984). Indeed, for the purposes of this case, the Court presumes the FCC's order is valid. *Nonetheless, the order's validity does not, ipso facto, bind the Court to defer to the FCC's interpretation of the TCPA. The Court is not obliged to defer to the FCC's interpretation of an unambiguous statute.*") (citing *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005); *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843 (1984)).

rejected, Defendant's interpretation of a "called party" under the TCPA. But that the law in the Eleventh Circuit is settled is fatal to Defendant's request for a stay, as no matter the result of the appeal in *ACA Int'l*, its outcome will not affect this matter.

Specifically, and as Defendant acknowledges, ECF No. 8 at 2, 6, in *Osorio v. State Farm Bank, F.S.B.*, the Eleventh Circuit first dismissed Defendant's interpretation of a "called party":

> In tune with Judge Easterbrook's analysis, we believe this really means that Betancourt had no authority to consent in her own right to the debt-collection calls to No. 8626 because one can consent to a call only if one has the authority to do so, and only the subscriber (here, Osorio) can give such consent, either directly or through an authorized agent. *We accordingly reject State Farm's argument that the "intended recipient" is the "called party" referred to in 47 U.S.C. § 227(b)(1)(A).*

746 F.3d 1242, 1251-53 (11th Cir. 2014) (citing *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012)).

Then, in *Breslow v. Wells Fargo Bank, N.A.*, the Eleventh Circuit reiterated its refusal to accept Defendant's position:

> During the pendency of this appeal, another panel of this court, faced with the same question, concluded in a published opinion that 'called party,' for purposes of § 227(b)(1)(A)(iii), means the subscriber to the cell phone service. That panel rejected the defendant's contention that called party could mean intended recipient.

755 F.3d 1265, 1267 (11th Cir. 2014).

Given the Eleventh Circuit's on-point decisions, Defendant's "called party" defense will fail here regardless of any decision in *ACA Int'l*. As a result, Defendant's request for a stay is without merit.

As the Northern District of Alabama further explained in denying a motion to stay a TCPA class action premised upon the "called party" issue, any decision in *ACA Int'l* regarding the definition of a "called party" under the TCPA is irrelevant in the Eleventh Circuit:

> [R]egardless of how the D.C. Circuit rules in *ACA International*, its decision will have no direct impact on this case. Because the FCC's interpretation of the term

> "called party" in the FCC Order is consistent with the Eleventh Circuit's decision in *Osorio*, a decision by the D.C. Circuit upholding the FCC Order will be in line with existing precedent in this circuit. If, on the other hand, the FCC Order is set aside by the D.C. Circuit, *Osorio* will remain controlling precedent in this case, as the Eleventh Circuit's decision in Osorio was not based on the FCC Order, the calls at issue in this case were made before the FCC Order was issued, and the D.C. Circuit's decision will not, in any event, be binding on this court.

*Schwyhart v. AmSher Collection Servs., Inc.*, 182 F. Supp. 3d 1239, 1242 (N.D. Ala. 2016).

Echoing the Northern District of Alabama's reasoning, Judge Moody also recently noted in denying a request for a stay premised on *ACA Int'l* that regardless of how the appeal is resolved, the law in the Eleventh Circuit will remain unchanged; thus, a decision in *ACA Int'l* is without consequence in this Court:

> The challenges before the D.C. Circuit will therefore have no effect on the viability of Rodriguez's lawsuit as pled in her complaint. Per the Hobbs Act, 28 U.S.C. § 2342, the D.C. Circuit will have the power, should it decide to do so on the merits, "to enjoin, set aside, suspend (in whole or in part), or [ ] determine the validity of . . . [the FCC Order]." If the FCC Order survives the challenge, Rodriguez's oral revocation will have had legal effect under the Order's "force of law." *Mais*, 768 F.3d at 1121. If the FCC Order does not survive, Rodriguez's oral revocation will have had the same legal effect, only under Eleventh Circuit precedent. *Osorio*, 746 F.3d at 1256. A stay under these conditions does not promote judicial economy.

*Rodriguez*, 2016 WL 369052, at *3; s*ee also Owens-Benniefield*, 2017 WL 1426720, at *2-*3 ("Here, the decision of ACA International will not be dispositive."); *accord Murray v. Diversified Consultants, Inc.*, No. 13-3074, 2014 WL 2574042, at *1 (M.D. Fla. June 9, 2014) (Moody, J.) (denying motion to stay TCPA case because *Osorio* provides "clear" guidance for numerous matters under the TCPA that also have been presented to the FCC).

In sum, because "[d]istrict courts are, of course, bound by the law of their own circuit," *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987), "[u]ntil the Supreme Court issues a decision that actually changes the law," this Court is "duty-bound to apply" the Eleventh Circuit's "precedent and to use it and any existing decisions of the Supreme Court to measure the likelihood

of a plaintiff's success on the merits." *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275,

1284 (11th Cir. 2015) *cert. denied sub nom. Gissendaner v. Bryson*, 135 S. Ct. 1580 (2015).

Consequently, an appeal of the 2015 FCC Order—which is in full accord with established Eleventh

Circuit jurisprudence—taken outside of the Eleventh Circuit, does not justify an indefinite stay of

this case.

> **B. Both circuit courts of appeal to address the issue have not only decided against Defendant's narrow interpretation of an ATDS, but also aligned themselves with the FCC's long-held and thrice-affirmed interpretation otherwise.**

Akin to case law regarding a "called party" under the TCPA, authority regarding what

constitutes an ATDS is well settled. In particular, while the Eleventh Circuit has yet to specifically

address the scope of an ATDS, both circuit courts of appeals to consider it in terms of "capacity"

are in agreement, among themselves and with the FCC. *See Dominguez v. Yahoo, Inc.*, 629 F.

App'x 369, 372 (3d Cir. 2015) ("Thus, so long as the equipment is part of a 'system' that has the

latent 'capacity' to place autodialed calls, the statutory definition is satisfied."); *Meyer v. Portfolio

Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("PRA does not dispute that its

predictive dialers have the capacity described in the TCPA. This is sufficient to determine that

PRA used an automatic telephone dialing system."); *Satterfield v. Simon & Schuster, Inc.*, 569

F.3d 946, 951 (9th Cir. 2009) ("When evaluating the issue of whether equipment is an ATDS, the

statute's clear language mandates that the focus must be on whether the equipment has the *capacity*

'to store or produce telephone numbers to be called, using a random or sequential number

generator.'") (emphasis in original). Thus, while Defendant refers to the FCC's interpretation as

"counter-textual," ECF No. 8 at 5, the courts of appeals to have addressed the issue disagree. And

that Defendant does not agree with this uniform law does not make it any less settled.

Yet Defendant asks this Court to stay this case, indefinitely, because it believes there is a

remote chance that a decision in *ACA Int'l* will nullify the FCC's interpretation of an ATDS that dates back to 2003, which both circuit courts of appeals to consider it have adopted. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014 ¶¶ 132 (July 3, 2003) ("in order to be considered an automatic telephone dialing system, the equipment need only have the capacity to store or produce telephone numbers"); *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, ¶ 12 (Jan. 4, 2008) (rejecting arguments that equipment is an ATDS "only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists"); *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15-72, ¶ 10 (adopted June 18, 2015 and released July 10, 2015) ("We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers.").

Noteworthy, not only is the standard of review with which the D.C. Circuit must decide *ACA Int'l* "highly deferential," but the court must also "presume the validity of [the] agency['s] action." *Vernal Enters., Inc. v. FCC*, 355 F.3d 650, 658 (D.C. Cir. 2004). In other words, so long as the FCC "articulated a rational connection between the facts found and the choice made," *see ADX Commc'ns of Pensacola v. FCC*, 794 F.3d 74, 79 (D.C. Cir. 2015), the 2015 FCC Order must be upheld. Accordingly, because the 2015 FCC Order is far from a novel, off-the-cuff interpretation, but instead the latest iteration of 13 years of interpretive rulemaking by the federal agency tasked by Congress with overseeing the TCPA, it is highly unlikely that a decision in *ACA Int'l* will change the FCC's thoroughly reasoned and long-held position regarding an ATDS. As such, the pending appeal in *ACA Int'l* does not justify an indefinite stay here.

III.   **Defendant fails to carry its burden under *Landis*.**

A.  **Defendant presents no clear case of hardship or inequity.**

Tellingly, Defendant begins its *Landis* analysis by asserting that its requested stay would pose no harm to Plaintiff; thus, shifting the burden to Plaintiff to prove otherwise. *See* ECF No. 8 at 8. But Defendant has it backwards, as the onus lays squarely on its own shoulders to show why the circumstances here justify an unusual exercise of this Court's discretion to bring this litigation to a halt for an indefinite period of time. *See Landis*, 299 U.S. at 254-55; *Garmendiz*, 2017 WL 3208621, at *2 ("The Defendant bears the burden of establishing that it will suffer a hardship or inequity if forced to proceed.").

Defendant, however, does not meet this burden, and instead points to being "force[d]" "to engage in discovery and other litigation about whether Bluestem's equipment was an autodialer and whether Plaintiff was the 'called party'—but without knowing what the controlling definitions of 'autodialer' or 'called party' will turn out to be and whether, in turn, *Osorio* and *Breslow* will be superseded by a new FCC order." ECF No. 8 at 9. But "being required to defend a suit [in the interim], without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*" to justify a stay of this action. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005); *see also Garmendiz*, 2017 WL 3208621, at *2 ("many modern courts have held that being required to defend a lawsuit does not constitute a hardship or inequity."); *Doe v. Selection.com*, No. 15-2338, 2015 WL 5853700, at *3-*5 (N.D. Cal. Oct. 8, 2015) (denying stay).

Restating this principle, the Eastern District of Virginia noted in denying a defendant's stay request that "[t]he mere fact that this action will go forward, and that litigating it will cost money, is an insufficient reason to warrant a stay." *Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*, No. 09-791, 2010 WL 1946262, at *5 (E.D. Va. May 10, 2010). And the same holds true even in

13

the face of prospective class discovery above and beyond merits discovery. *See, e.g.*, *Montez v. Chase Home Fin. LLC*, No. 11-530, 2011 WL 2729445, at *1 (S.D. Cal. July 13, 2011) (refusing stay in spite of defendant's complaint of the potential "significant burden and expense of engaging in potentially broad-ranging and expensive discovery concerning this putative class action").

At the end of the day, Defendant makes no showing of any "hardship" or "inequity" to justify the extraordinary relief it now seeks. *See Mendez v. Optio Solutions, LLC*, No. 16–1882, 2017 WL 914587, at *4 (S.D. Cal. Mar. 8, 2017) (denying a request for a stay pending resolution of *ACA Int'l* in part because "Defendant [did] not demonstrate a hardship in moving forward with inevitable discovery and motion practice"); *Jones v. AD Astra Recovery Servs., Inc.*, No. 16-1013, 2016 WL 3145072, at *6 (D. Kan. June 6, 2016) (denying a stay pending *ACA Int'l* and finding the "potential that Defendant could engage in greater discovery, if the case is not stayed, does not constitute a 'rare circumstance' which justifies an indefinite stay"); *Konopca v. Comcast Corp.*, No. 15-6044, 2016 WL 1645157, at *4 (D.N.J. Apr. 26, 2016) (denying stay pending *ACA Int'l* where "the only purported 'hardship' identified by Defendant is the possibility that the parties may engage to some extent in unnecessary discovery and/or motion practice").

**B. An indefinite stay would prejudice Plaintiff and class members, many of whom may still be subject to Defendant's illegal conduct.**

On the other hand, imposing an indefinite stay here would prejudice both Plaintiff and the class, particularly in light of the likely ongoing telephone calls to class members on whose behalf Plaintiff seeks injunctive relief:

> There is at least a "fair possibility" that a stay would harm Plaintiffs and members of the putative class. This is because Plaintiffs not only seek damages, but also injunctive relief . . . . If Plaintiffs' allegations are true, Chase will continue to obtain excessive fees from Plaintiffs and the putative class in violation of California law. . . . . Accordingly, Plaintiffs' prayer for injunctive relief renders a stay inappropriate here. *See Landis,* 299 U.S. at 255; *Lockyer,* 398 F.3d at 1112 (holding that prayer

for injunctive relief against ongoing in future harm weighed against granting a stay).

*Montez*, 2011 WL 2729445, at \*2.

This is especially true here, where Defendant is now facing its third class action for violating the TCPA, and has held those actions in abeyance while ACA *Int'l* remains pending. *See* Ex. A at 9-10. In sum, there is more at stake here than a simple delay in recovering monetary damages—although that constitutes prejudice in its own right. More fundamentally, a stay "would suspend for an indefinite period of time Plaintiff's opportunity—and the opportunity of the putative class—to vindicate their rights before this Court." *O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-CV-01821-BLF, 2016 WL 815357, at \*5 (N.D. Cal. Mar. 2, 2016). Because the longer it takes to obtain a judgment against Defendant, the longer Defendant may continue its unlawful practices—as other delayed cases against Defendant demonstrate.

Additionally, the delay inherent in an indefinite stay could further prejudice Plaintiff and the class should relevant evidence become more difficult, or even impossible, to obtain due to the passage of time. *See, e.g.*, *Garmendiz*, 2017 WL 3208621, at \*2 ("Furthermore, the risk of evidence being lost or destroyed and the potential for witnesses' memories to fade further demonstrates the potential for prejudice to the Plaintiff. In light of the foregoing, the Court finds that granting a stay will prejudice the Plaintiff."); *Gosneigh v. Nationstar Mortg., LLC,* No. 8:16-CV-3040-T33AEP, 2017 WL 435818, at \*2 ("According to Gosneigh, such a delay could lead to an 'irreversible loss of needed information,' such as original call logs and recordings."); *Richardson v. Verde Energy USA, Inc.*, No. 15-6325, 2016 WL 4478839, at \*2 (E.D. Pa. Aug. 25, 2016) ("Moreover, as the plaintiffs argue, a significant delay with unknown limits would cause them unnecessary prejudice. Memories fade, records are lost or destroyed as time wears on, and employees get fired, are

15

transferred, or quit. On the other hand, the defendant would not be prejudiced if the stay is denied because it would experience no harm by engaging in discovery and motion practice.").

Defendant, through its motion to stay, fails to meaningfully address these points. *See Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) ("Because there is no certain way to determine when a ruling will be forthcoming, and, as *Lathrop* points out, a decision by the D.C. Circuit may not be the end of litigation in *ACA International*, the Court concludes that there is a fair possibility of harm to Plaintiff because the length of the stay is an indefinite one.").

Accordingly, this Court should deny Defendant's motion to stay.

**C.  There is no efficiency to be gained from Defendant's proposed stay.**

Notwithstanding the above-noted downsides that would result from a stay here, there is no efficiency to be gained from Defendant's proposed stay regardless of a decision in *ACA Int'l* because discovery will be necessary no matter the substance of the decision. *See, e.g.*, *Coleman v. Verde Energy USA, Inc.*, No. 17-62, 2017 WL 1382875, at *2 (S.D. Ill. Apr. 18, 2017) ("Additionally, the Court finds no simplification of issues or judicial efficiency will be gained by grant of stay. As stated above, discovery must be conducted to determine whether the statutory definition of ATDS in *ACA Int'l* is dispositive. It is wholly inefficient to indefinitely postpone discovery, then—at some unknown point in the future—conduct discovery proceedings which could have been previously completed, all in order to determine whether Verde's dialing system aligns with the statutory definition in *ACA Int'l*."); *Glick v. Performant Fin. Corp.*, No. 16-5461, 2017 WL 786293, at *2 (N.D. Cal. Feb. 27, 2017) ("Defendant's assertion that *ACA International*, *Marks*, and the Petition will entirely moot Plaintiff's claims and preclude the need for discovery is speculative [because] Defendant will still be required to produce discovery to settle the factual disputes regarding its autodialing technology no matter the results from the appeals or the

Petition."); *Cabiness v. Educ. Fin. Sols., LLC*, No. 16–01109, 2017 WL 167678, at *3 (N.D. Cal. Jan. 17, 2017) ("The parties are now engaged in discovery and, as this Court has previously noted, discovery in this case will be required regardless of the outcome in [*ACA Int'l*].").

As a result, even in the unlikely event that a decision in *ACA Int'l* completely wipes out the FCC's longstanding characterization of an ATDS, this case will be ripe for disposition only after discovery reveals the workings of the system Defendant used to place calls to Plaintiff. *See Richardson*, 2016 WL 4478839, at *3 ("The impact the ACA decision might have on this case is limited only to the scope of the definition of an automatic telephone dialing system. The plaintiff will still have to conduct discovery on the composition of the defendant's dialing system regardless of the outcome of the ACA case."). Accordingly, Defendant's requested stay is without support.

### D. Defendant's statement that it seeks a stay here to avoid the "waste [of] judicial and private resources" should be taken with a grain of salt.

Defendant's purported goals to enhance "judicial economy" and "preserve public and private resources," ECF No. 8 at 3-4, ring particularly hollow in light of the long, tortured history of TCPA defendants using repeated stay requests as a sword rather than a shield. That is, prior to the issuance of the FCC's July 2015 Order, TCPA defendants routinely moved district courts across the country to stay TCPA actions until the FCC decided the petitions then-pending before it, including the petition currently at issue in *ACA Int'l*. To that end, TCPA defendants regularly argued that the FCC's forthcoming guidance would be binding, and would constitute the last, final, and official word on the TCPA.

Then, on July 10, 2015, the FCC issued its binding guidance by way of the 2015 FCC Order, which provided the clarity TCPA defendants across the country had long been waiting for. The only problem for TCPA defendants was that the FCC's ruling did not favor them. With this in mind, Defendant's instant request that this Court stay this case pending further review in *ACA*

*Int'l* is paradoxical, as it demonstrates that TCPA defendants' motions to stay actions pending petitions before the FCC, subsequent appeals of those petitions, and what inevitably will be even more appeals after that, are not meant to ensure uniform application of the TCPA, but rather to perpetually avoid litigation resulting from large-scale violations of the TCPA. Indeed, Defendant has done just that by obtaining stays in unrelated TCPA actions against it. *See* ECF No. 8 at 9-10.

Also noteworthy, a decision in *ACA Int'l* may ultimately be appealed to the Supreme Court. *See* 47 U.S.C. § 402(j). So if the court in *ACA Int'l* fails to issue a ruling that satisfies Defendant— just as the FCC and the Eleventh Circuit did—Defendant undoubtedly will argue that this case should be stayed pending resolution of any related proceedings before the Supreme Court, and any additional petitions that invariably will be filed with the FCC in the future. *Accord Schwyhart*, 182 F. Supp. 3d at 1243 ("AmSher asserts that the stay it desires would not be 'indefinite', but that is clearly not the case . . . [and] there is always the possibility that the D.C. Circuit's decision will be appealed to the Supreme Court, adding a further layer of indefinite—and perhaps lengthy—delay were a stay to be granted here.").

In any event, potentially endless appeals and new petitions to the FCC will not change binding Eleventh Circuit law, making any delay of this matter for naught. What's more, any delay will serve only to harm the public and absent class members, not protect them. As such, this Court should deny Defendant's motion to stay this case.

### Conclusion

Given the well-settled law applicable to this case, *ACA Int'l* should have no bearing on Plaintiff's claims. And even if its result proves otherwise, discovery is nevertheless necessary to determine exactly what type of dialing system Defendant used here. Consequently, "the compelling interests of the expedient resolution of disputes and of providing certainty to the parties

18

here and to others similarly situated outweigh any potential benefits in deferring to the D.C. Circuit." *O'Hanlon*, 2016 WL 815357, at *5.

Date: November 9, 2017

*/s/ Michael L. Greenwald*
Michael L. Greenwald
James L. Davidson
Jesse S. Johnson
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Tel: (561) 826-5477
Fax: (561) 961-5684
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Aaron D. Radbil
Greenwald Davidson Radbil PLLC
106 East Sixth Street, Suite 913
Austin, Texas 78701
Phone: (512) 322-3912
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

Counsel for Plaintiff and the proposed class

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed on November 9, 2017, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

/s/ Michael L. Greenwald
Michael L. Greenwald