UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

———————————————————— x
:
WADDELL WILLIAMS, on behalf of himself :
and others similarly situated,                        :    Case No. 8:17-CV-01971-T-27AAS
:
Plaintiff,                :
:
vs.                              :
:
BLUESTEM BRANDS, INC.,                           :
:
Defendant.                  :
:
———————————————————— x

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

**Introduction**

After over a year of vigorously contested litigation and as a result of mediation before the Hon. Diane M. Welsh (Ret.), Plaintiff Waddell Williams and Defendant Bluestem Brands, Inc. ("Bluestem") reached an agreement to resolve this class action case alleging claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

The TCPA makes it unlawful to use an automatic telephone dialing system ("ATDS") to place a call to a cellular telephone number without the prior express consent of the called party. Plaintiff alleged in this case that Bluestem placed calls intended for its customers to wrong or reassigned cellular telephone numbers. That is, Mr. Williams alleged that Bluestem violated the TCPA by placing autodialed calls to persons different from those it was trying to reach and persons from whom Bluestem did not have prior express consent to call. Bluestem denies any liability, denies that it made calls by using an ATDS, and denies that its practices violate the TCPA.

1

Mr. Williams now seeks preliminary approval of the parties' class action settlement agreement ("Agreement").[1] Mr. Williams and his counsel firmly believe the settlement—which requires the creation of a non-reversionary common fund amounting to $1 million, plus a separate payment by Defendant, not to exceed $269,500, to satisfy the cost of class notice and administration, for a total settlement fund of up to $1,269,500—is fair, reasonable, adequate, and in the best interests of the class. This is especially so in light of the substantial risks and uncertainties of protracted litigation, and Plaintiff's concerns about Defendant's finances. Accordingly, Mr. Williams respectfully requests that this Court enter the accompanying order granting preliminary approval of the settlement.

Bluestem does not oppose this relief.

## Summary of the Settlement

**I.    Mr. Williams alleges that Bluestem violated the TCPA by placing autodialed calls to wrong or reassigned cellular telephone numbers. Bluestem denies Mr. Williams's allegations, denies it used an ATDS to place calls, and denies it violated the TCPA.**

Congress enacted the TCPA in 1991 to address privacy and harassment concerns arising from certain telemarketing practices that escaped state invasion of privacy and nuisance statutes by operating interstate. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (2012).[2] To that end, "[t]here are two elements to an auto-dialer TCPA claim that a plaintiff must allege: (1) a call to a cellular telephone; (2) via an automatic telephone dialing system." *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013 WL 6865772, at *4 (M.D. Fla. Dec. 31, 2013) *aff'd*, 797 F.3d 1302 (11th Cir. 2015). "Prior express consent" of the called party is an affirmative

---

[1]    The Agreement and its exhibits are appended to the Declaration of Michael L. Greenwald, attached as Exhibit A.

[2]    Emphasis is added, and internal quotations and citations are omitted, unless otherwise noted.

defense to a TCPA action. *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012) *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

Here, Mr. Williams's claims are relatively straightforward: Bluestem placed calls to Mr. Williams's cellular telephone number even though he was not a Bluestem customer and did not owe money that Bluestem was trying to collect. Rather, Bluestem made these calls while attempting to reach someone else—its customer who it alleges had a past-due account balance. Discovery indicates that the person Bluestem attempted to reach changed her phone number at some point after providing it to Bluestem. This person's cellular telephone number was then reassigned to Mr. Williams, who obtained it in May 2017. *See* ECF No. 40 at 3-5.

Significantly, Bluestem called 280,570 different cellular telephone numbers, between November 2, 2015 and July 8, 2018, for which its own records include a wrong number indication. Based on Bluestem's analysis, it believes that approximately 65% of the persons associated with those telephone numbers, or approximately 182,370 persons, may not be Bluestem customers, while 35% likely are Bluestem customers, notwithstanding its internal wrong number designations. *See* ECF No. 47 at 7, 11-12.

## II. Despite facing significant obstacles to proving liability and attaining class certification, Mr. Williams's litigation efforts resulted in a meaningful recovery for class members.

While Mr. Williams believes in his claims, Bluestem vehemently disputes that it violated the TCPA. To that end, Bluestem raised a host of defenses. For example:

- Bluestem contended that the platform it utilized to make calls to class members was not an ATDS, and produced an expert report supporting its position. If this Court agreed, class members' claims would fail. *See, e.g.*, *Glasser v. Hilton Grand Vacations Co., LLC*, No. 8:16-cv-952-JDW-AAS, 2018 WL 4565751, at *7 (M.D. Fla. Sept. 24, 2018 (Whittemore, J.) (granting summary judgment in favor of the defendant and finding that the defendant did not place the calls at issue by using an ATDS);

- The Federal Communications Commission's July 10, 2015 Declaratory Ruling and Order ("2015 FCC Order") included a one-call safe harbor for calls made to reassigned

cellular telephone numbers, like those at issue here. While the D.C. Circuit Court of Appeals invalidated that portion of the 2015 FCC Order in *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018), it directed the FCC to reconsider whether and, if so how, callers can reasonably rely on consent given by prior subscribers. Should the FCC institute an expansive, backward-looking safe harbor, Bluestem may have a viable defense based on this D.C. Circuit ruling;

- Bluestem also contended that it maintains robust safeguards to ensure compliance with the TCPA. While Bluestem vehemently disputes any liability, to the extent any violations did occur, Bluestem would argue that any violation of the TCPA was unintentional and would not support increased statutory damages; and

- Mr. Williams faced significant risks in obtaining class certification. *See* ECF Nos. 47-50 (Bluestem's opposition to class certification and related report and exhibits). Several courts in this Circuit have refused to certify TCPA class actions, making the likelihood of certification uncertain. *See, e.g., Tillman v. Ally Fin. Inc.*, No. 16-313, 2017 WL 7194275 (M.D. Fla. Sept. 29, 2017); *Shamblin v. Obama for America*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765, at *8 (M.D. Fla. Apr. 27, 2015).

In addition, based on publicly available information that Mr. Williams and undersigned counsel have reviewed, each is concerned that Bluestem's current financial position created a risk that, even if Mr. Williams ultimately prevailed, the class could recover nothing. For instance, Moody's has twice downgraded Bluestem in the past 16 months.[3] Similarly, S&P Global provided negative ratings for Bluestem's creditworthiness.[4] Bluestem, however, maintains belief in its current financial position and long-term viability.

---

[3] *See* https://www.moodys.com/research/Moodys-revises-Bluestem-Brands-outlook-to-negative-Caa1-CFR-affirmed--PR_385797 (last visited Nov. 21, 2018); *see also* https://www.moodys.com/research/Moodys-Downgrades-Bluestem-Brands-CFR-to-Caa1--PR_368723 (last visited Nov. 21, 2018).

[4] https://www.spratings.com/documents/20184/908557/US_CO_Event_Webcast_17JUL_Retail Debt/0ec628d5-aff4-40ed-94fd-c2c8fe991c45 (last visited Nov. 21, 2018); *see also* https://www.usatoday.com/story/money/2017/12/20/here-26-retailers-and-apparel-companies-most-risk-2018/950328001/ (last visited Nov. 21, 2018).

Accounting for this, and to protect against this risk of non-payment, the settlement requires Bluestem to fund the settlement, with a third-party escrow agent, no later than (a) 10 business days after this Court preliminarily approves the settlement, or (b) February 15, 2019, whichever is later.

Against this backdrop, and after extensive fact discovery, expert discovery, and motion practice, the parties mediated this case on September 25, 2018 before Judge Welsh[5] of JAMS. With Judge Welsh's assistance, the parties reached an agreement to resolve this matter.

## III. The settlement provides for a non-reversionary common fund of $1 million, plus all costs of notice and claims administration, for a total settlement of up to $1.269 million.

The Agreement defines a settlement class under Rule 23(b)(3) comprised of:

All persons and entities throughout the United States (1) to whom Bluestem Brands, Inc. placed a call in connection with a Fingerhut, Gettington, or PayCheck Direct account, (2) directed to a number assigned to a cellular telephone service, (3) in connection with its efforts to collect an account balance, (4) via LiveVox, Inc.'s Quick Connect platform, (5) where Bluestem's records contain a notification of wrong phone, (6) from November 2, 2015 through July 8, 2018.

Participating class members who aver that they received wrong-number calls from Bluestem and are not Fingerhut, Gettington, or PayCheck Direct accountholders will receive a pro-rata share of the settlement fund, after attorneys' fees and expenses are deducted. While the exact per-claimant recovery will not be known until class members are provided with an opportunity to submit claims, given historical claims rates in TCPA cases (approximately 4-8%), each participating class member is likely to receive between $25 and $75, after deducting requested attorneys' fees and expenses, and an incentive award for Mr. Williams. In exchange, class

---

[5]  "Over the past 23 years, as a JAMS neutral and a United States Magistrate Judge, [Judge Welsh] has successfully resolved over 5000 matters, covering virtually every type of complex dispute. Specifically, Judge Welsh has extraordinary skill in resolving high-stakes multi-party commercial disputes, employment matters, catastrophic personal injury cases, class actions, mass torts and multi-district litigations (MDL's). She was recognized as a 2016 'ADR Champion' by the National Law Journal." https://www.jamsadr.com/welsh/ (last visited Nov. 21, 2018).

members will release their claims arising out of Bluestem's use of an ATDS to place calls to their cellular telephones during the class period.

Subject to Court approval, an award of attorneys' fees and expenses, and an incentive award for Mr. Williams also will be deducted from the fund. To that end, Mr. Williams will seek an incentive award of $5,000. Class counsel also will seek the reimbursement of litigation costs and expenses not to exceed $18,500, and an award of attorneys' fees not to exceed 30 percent of the total settlement fund. Of note, Bluestem has not agreed to the incentive award or an award of attorneys' fees, costs, and expenses. As such, it may oppose the requests. Moreover, this Court's approval of an incentive award, attorneys' fees, or expenses is not a condition of the settlement.

The Agreement also requires a robust notice program, including direct mail notice to each class member who can be identified through Bluestem's call records, publication notice, and the creation of a dedicated settlement website and toll-free telephone number.

## Argument

### I.    The proposed settlement class satisfies the requirements of Rule 23 and should be certified for settlement purposes.

To certify the proposed class, Mr. Williams must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation, as well as Rule 23(b)(3). *See Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 683-84 (S.D. Fla. 2013) (certifying TCPA class action). And particularly because certification is sought in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *See*, *e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

### A.    The class is so numerous that joinder is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement of Rule 23(a) is satisfied by the impracticability of joinder, which is generally presumed if a putative class amounts to more than forty individuals." *Holman v. Student Loan Xpress, Inc.*, No. 9:08-cv-305-T-23MAP, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009); *see also Jones v. Firestone Tire & Rubber Co., Inc.*, 977 F.2d 527, 534 (11th Cir. 1992). Here, because the class contains approximately 280,000 members throughout the United States, numerosity is satisfied. *See Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 WL 12533121, at *8 (S.D. Fla. Aug. 3, 2015) ("Here, the numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of more than a thousand class members, and joinder of all such persons is impracticable.").

### B.    Questions of law and fact are common to the class.

"Commonality is satisfied by the existence of at least one issue affecting all or a significant number of proposed class members." *Holman*, 2009 WL 4015573, at *2. "To meet the commonality requirement, the moving party must demonstrate that the class action involves issues susceptible to class-wide proof." *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 659 (M.D. Fla. 2015) (Whittemore, J.) (certifying class action) (citing *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009)). Notably, "Rule 23 does not require that all the questions of law and fact raised by the dispute be common." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986).

Here, class members' claims stem from the same circumstances, in that Bluestem made calls to class members' cellular telephones, using third-party vendor LiveVox, Inc., which are alleged to be in violation of the TCPA in that Bluestem was calling wrong numbers. *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at *1 (M.D. Fla.

Nov. 22, 2016) (Merryday, J.) (granting preliminary approval to wrong number TCPA settlement); *see also Gehrich v. Chase Bank USA, N.A.*, Case No. 12 C 5510, 2016 WL 806549, at *4 (N.D. Ill. Mar. 2, 2016) ("The proposed class also satisfies commonality and typicality. Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone.").

Thus, common questions include whether Bluestem used an ATDS as defined by the TCPA to place the calls at issue, and whether Bluestem is liable for calls made to allegedly wrong or reassigned numbers. Accordingly, the commonality requirement is satisfied. *See James*, 2016 WL 6908118, at *1 ("Second, a common question of fact, whether Chase auto-dialed each person's phone, unites the class."); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-1290, 2013 WL 444619, at *2 (S.D. Cal. Feb. 5, 2013) ("Here, the proposed class members' claims stem from the same factual circumstances, in that the calls were made by Wells Fargo to class members . . . using auto-dialing equipment or with a prerecorded voice message. There are also several common questions of law, including: (1) whether Wells Fargo negligently violated the TCPA; (2) whether Wells Fargo willfully or knowingly violated the TCPA; and (3) whether Wells Fargo had 'prior express consent' for the calls. Accordingly, the commonality requirement is met."); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-CV-01413-W-AJB, 2008 WL 4155361, at *6 (S.D. Cal. Sept. 5, 2008) ("In my judgment, the commonality requirement is met here. The putative class claims stem from the same alleged conduct, *i.e.,* NCO allegedly calling consumers on their cellular telephones, or other wireless devices, without 'prior express consent,' using an 'automatic telephone dialing system' or an 'artificial or prerecorded voice.' The putative class claims are legally and factually similar.").

C.    **The claims asserted by Mr. Williams are typical of the claims of class members.**

Typicality requires that "the claims or defenses of the representative parties are typical of

the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Here, Bluestem called Mr. Williams's cellular telephone number while intending to reach someone else. Because Bluestem's call records show a wrong number designation for Mr. Williams's cellular telephone number, and because Mr. Williams is not, and never was, a Fingerhut, Gettington, or PayCheck Direct accountholder, Mr. Williams is a member of the class, and he possesses the same interests, asserts identical claims, and seeks identical relief on behalf of all members of the class. *Gehrich*, 2016 WL 806549, at *4 ("All class members allegedly received calls or text messages from Chase in violation of the TCPA, and that is enough to satisfy the typicality requirement.").

> **D.    Mr. Williams and his counsel will continue to fairly and adequately protect the interests of the class.**

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[C]lass counsel and the class representatives are adequate representatives of the class if (1) plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and (2) the plaintiffs lack interests antagonistic to those of the rest of the class." *Holman*, 2009 WL 4015573, at *2.

As set forth above, Mr. Williams's claims are aligned with the claims of the class, and he therefore has every incentive to vigorously pursue class members' claims, as he has done to date. To that end, Mr. Williams has been actively involved in this litigation since its inception, including responding to written discovery requests, sitting for deposition, and traveling to Philadelphia to attend mediation.

In addition, Mr. Williams retained the services of Greenwald Davidson Radbil PLLC, which has significant experience representing plaintiffs in nationwide TCPA class actions. Mr. Williams's counsel therefore are well-equipped to handle this matter, as their work in this case demonstrates. *See* Ex. A at ¶¶ 9-38; *James*, 2016 WL 6908118, at *1 ("This order appoints as . . .

—class counsel Michael L. Greenwald, James L. Davidson, and Aaron D. Radbil of Greenwald Davidson Radbil PLLC, each of whom has significant experience litigating TCPA class actions."); *Roundtree*, 304 F.R.D at 661 ("As set forth in greater detail in her motion, Greenwald has been appointed as class counsel in a number of actions and thus provides great experience in representing plaintiffs in consumer class actions.").

### E.    Common questions predominate over any individual issues.

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Here, the settlement class satisfies Rule 23(b)(3).

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Here, the central legal issue before this Court is whether Bluestem's calls to class members violated the TCPA. Additional common questions include whether Bluestem used an ATDS as defined by the TCPA, and whether Bluestem is liable for alleged "wrong number" calls—that is, whether Bluestem violated the TCPA by placing calls intended for customers it was trying to reach but whose phone numbers were potentially reassigned to different persons. For settlement purposes, these common questions predominate over any individual issues. *James*, 2016 WL 6908118, at *1 ("Also, the class satisfies Rule 23(b)(3)'s predominance requirement. Class-wide proof can answer the predominant questions (whether Chase auto-dialed each person and whether each call violates the TCPA)."); *see also Malta*, 2013 WL 444619, at *4 ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members. Accordingly, the

predominance requirement is met."). Further, predominance is buttressed because each class member "is eligible to receive an identical pro-rata share of the settlement fund, suggesting that there is no need for an individualized determination of the share each class member is entitled to." *Lo v. Oxnard European Motors, LLC*, No. 11-1009, 2011 WL 6300050, at *3 (S.D. Cal. Dec. 15, 2011).

      **F.**    **Class treatment is superior to other available methods for the fair and efficient adjudication of the claims here.**

Because the claims in this case all arise from the same conduct on the part of Bluestem, this class action settlement is the superior vehicle for determining the rights of absent class members. Fed. R. Civ. P. 23(b)(3); *see Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (certifying TCPA class action, and finding that, "[g]iven the large number of purported members in this suit and the similarity of their claims, disposition by class action is an efficient use of judicial resources."); *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) ("This action involves thousands of plaintiffs, each with a relatively small, nearly identical claim, who might not otherwise seek or obtain relief absent a class action. . . . All in all, a class action is superior to other methods of adjudicating this controversy.").

Indeed, resolving the claims of thousands of persons through one settlement class is superior to the potential for thousands of duplicative lawsuits, and the high likelihood that additional thousands of meritorious claims will go unredressed.

Bluestem agrees only that certification of a settlement class is appropriate. Should the Court reject the settlement or should settlement not occur for any other reason, Bluestem's right to argue against class certification will not be prejudiced.

II.     **This Court should preliminarily approve the settlement as "fair, reasonable, and adequate" under Rule 23(e).**

Rule 23(e) requires that the Court make a preliminary determination of fairness:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002).

"The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the 'range of reasonableness.'" *Gevaerts*, 2015 WL 12533121, at *6. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Id*. When evaluating the fairness of a class action settlement, "courts are guided by the 'strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.'" *Id*. at *5 (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). "The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Gevaerts*, 2015 WL 12533121, at *6 (citing, *e.g.*, *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.")).

While a full fairness inquiry is unnecessary at the preliminary approval stage, the Eleventh

Circuit has identified six factors to be considered in analyzing the fairness of a class action settlement under Rule 23(e): "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986; *see also Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994). Each relevant factor supports the conclusion that the settlement here is fundamentally fair, adequate, and reasonable, and should be preliminarily approved.

### A. The settlement was the product of negotiations by experienced counsel, and the result of mediation before a highly regarded mediator.

The parties' arm's-length settlement negotiations, which were overseen by Judge Welsh, demonstrate the fairness of the settlement, and that the settlement is not a product of fraud or collusion. *See James*, 2016 WL 6908118, at *2 ("No indication appears that the settlement resulted from collusion. Rather, the parties settled with the assistance of court-appointed mediator Robert M. Daisley."). In addition, the parties' settlement discussions occurred after written discovery, depositions, and expert discovery, after the Court denied Bluestem's motion to stay, and after Mr. Williams moved for (and Bluestem opposed) class certification. Ex. A at ¶¶ at 39-71 (outlining litigation history).

As a result, the parties—and counsel with extensive experience in TCPA litigation—were able to properly assess the strengths and weaknesses of their positions and evaluate the fairness of the settlement.

### B. The complexity, expense and likely duration of the litigation favors preliminary approval of the settlement.

By their very nature, because of the uncertainties of outcome, difficulties of proof, and

lengthy duration, class actions readily lend themselves to compromise. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense").

This case was no different. The parties engaged in written discovery, expert discovery, depositions, and motion practice, including Bluestem's motion to stay, Bluestem's motion to transfer, and Mr. Williams's motion for class certification. Ex. A at ¶¶ at 39-71. Significant motion practice lay ahead as well, including competing motions for summary judgment. *See* ECF No. 47 at 5 ("To identify alleged autodialed calls, Williams limits the class to calls placed using LiveVox's 'Quick Connect' platform, which he argues is an automatic telephone dialing system under the TCPA. Bluestem does not agree that the Quick Connect platform is an autodialer under the TCPA [and] Bluestem plans to move for summary judgment on that ground.").

Given the considerable work already performed—and the work left to perform, including any appeals—settlement was warranted. *See, e.g.*, *Bennett*, 96 F.R.D. at 349-50 (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial").

### C. The factual record is sufficiently developed to enable Mr. Williams and class counsel to make a reasoned judgment concerning the settlement.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations."

*Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

This case has been ongoing for over a year. As noted above, the parties engaged in significant written and deposition discovery, focused both on Mr. Williams's individual claims, and on those of absent class members. Moreover, Mr. Williams served the report of his expert witness, which focused on the ability to identify class members from Bluestem's call records. Bluestem also provided a rebuttal expert report and a separate expert report on ATDS-related issues. In addition, Mr. Williams's motion for class certification was fully briefed. ECF Nos. 40, 45, 47-50. The settlement was, therefore, consummated when the parties were well-informed regarding the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

   **D.    The probability of Mr. Williams's success on the merits and the range of possible recovery favor preliminary approval.**

The Court must also consider "the likelihood and extent of any recovery from the defendants absent— . . . settlement." *In re Domestic Air Transp.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). However, that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350. This is because a settlement must be evaluated in light of the attendant risks with litigation. *Id.* These factors also weigh in favor of the settlement here.

While Mr. Williams believes strongly in his claims, by any objective assessment he faced significant hurdles to obtaining class-wide relief. Among the obstacles to prevailing on his claims and those of the class were:

- The disputed questions regarding what constitutes an ATDS under the TCPA, and whether the LiveVox system utilized by Bluestem is an ATDS;

- The pendency of proceedings before the FCC, which could eliminate, or significantly curtail, the viability of wrong number TCPA claims, like those asserted by Mr. Williams and absent class members;

- The significant risks in obtaining class certification, including hurdles related to the ascertainability of the class and the commonality and predominance requirements of Rule 23;

- Even had Mr. Williams prevailed on the merits, Bluestem would assert that its robust TCPA safeguards made the prospect for the recovery of treble damages unlikely. Moreover, some courts view awards of aggregate, statutory damages with skepticism and reduce such awards on due process grounds. *See, e.g.*, *Aliano v. Joe Caputo & Sons—Algonquin, Inc.*, No. 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case—between $100 and $1,000 per violation—would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); and

- Mr. Williams's and undersigned counsel's concern about the risk of non-payment for class members.

Despite these obstacles, and with the assistance of a highly respected mediator, Mr. Williams negotiated a settlement in line with similar TCPA class action settlements. Dividing the maximum settlement payment (up to $1.269 million) by 182,370 (the approximate number of class members who likely received wrong number calls from Bluestem) amounts to just under $7 per person. In comparison, in *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla. Jan. 30, 2015), final approval was granted in a similar wrong number TCPA class action for $2.63 per person (settling claims of 3 million class members for $7.9 million)—less than one-third the amount class members will receive here. *See also James*,

2016 WL 6908118, at *1 (preliminary approval of wrong number TCPA settlement for $5.55 per person).

Indeed, the settlement provides immediate cash relief to the class. After deducting the requested attorneys' fees, expenses, and incentive award, if 5 percent of class members submit claims—a typical claims rate for a TCPA class action—each person should receive approximately $43, an amount in line with TCPA settlements generally. *See James*, 2016 WL 6908118, at *2 ("Discounting the statutory award by the probability that Chase successfully defends some class members' claims, a recovery of $50 per person fairly resolves this action.") (citing *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (Holderman, J.) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action)).

Per-claimant recoveries in other TCPA class actions often fall within a similar range. *See, e.g.*, *Rose v. Bank of Am. Corp.*, Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving TCPA class settlement where claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309352 (N.D. Cal. Mar. 31, 2014) (less than $50 per TCPA claimant); *Arthur v. Sallie Mae, Inc.*, 10–CV198–JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) ($20-$40 per participating class member); *Adams v. Allianceone Receivables Mgmt.*, *Inc.*, No. 3:08-cv-00248-JAH-WVG, ECF No. 113 (S.D. Cal. Apr. 23, 2012) (approximately $1.48 per class member).[6]

---

[6]      *See also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 227-28 (N.D. Ill. 2016) ($34 million for more than 32 million class members); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ($39.98 million for more than 9,065,262 class members); *Connor v. JPMorgan Chase Bank*, No. 10 CV1284, ECF No. 113 (S.D. Cal. May 30, 2014) ($11.66 million for 2,684,518 class members); *Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 WL 2286076, at *4 (M.D. La. May 23, 2013) (approving settlement that provides up to $15 cash payment for TCPA violation); *In re Jiffy Lube Int'l, Inc.*, No. 11-02261, ECF No. 97 (S.D. Cal.) (class members entitled to vouchers for services valued at $17.29 or a cash payment of

In sum, the settlement here constitutes an objectively fair result for the class. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—less than the expected recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

Thus, given the significant risks in continued litigation, this settlement is fair, reasonable, and adequate.

## E.    The opinions of Mr. Williams and class counsel favor preliminary approval.

As noted above, class counsel is experienced in class action litigation, having litigated consumer protection cases on a class-wide basis in many jurisdictions, including those under the TCPA. Mr. Williams and class counsel firmly believe that the settlement is fair, reasonable, and adequate under the circumstances, and in the best interests of class members.

Further, a strong initial presumption of fairness should attach to the proposed settlement because it was reached by experienced counsel after arm's-length negotiations. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp.*, 148 F.R.D. at 312-13 ("In determining

---

$12.97); *Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, ECF No. 74 (N.D. Ill.) ($28.13 recovery per claimant); *Agne v. Papa John's Int'l, et al.*, No. 2:10-cv-01139, ECF No. 389 (W.D. Wash.) ($50 recovery plus $13 merchandise per claimant); *Clark v. Payless ShoeSource, Inc.*, No. 2:09-cv-00915, ECF Nos. 61 at 3, 72 (W.D. Wash.) ($10 merchandise certificate per claimant); *Cubbage v. The Talbots, Inc. et al.*, No. 2:09-cv-00911, ECF No. 114 (W.D. Wash.) ($40 or $80 merchandise certificate per claimant).

whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.").

For all of the foregoing reasons, this Court should preliminarily approve the settlement.

**III.    The proposed plan of notice satisfies the requirements of Rule 23 and due process.**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In short, "[t]he adequacy of class notice is measured by reasonableness," and "[t]he notice must provide the class members with information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or opt out of the action." *Roundtree v. Bush Ross, P.A.*, No. 8:14-cv-357-T-37AEP, 2015 WL 5559461, at *1 (M.D. Fla. Sept. 18, 2015) (Whittemore, J.) (quoting *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011)).

Here, and after a competitive bidding process, the parties have agreed to a robust notice program to be administered by a well-regarded third-party class administrator—Angeion Group ("Angeion")—with significant experience in the administration of TCPA class actions. First, Bluestem will provide to Angeion a listing of all cellular telephone numbers it dialed, via LiveVox during the class period, that contain a wrong number designation. Angeion will then use one or more third-party vendors to perform reverse look-ups of these telephone numbers to obtain class members' names and addresses, which will be updated through the National Change of Address system, which updates addresses for all people who moved during the previous four years and filed a change of address with the U.S. Postal Service. Each person identified through this process will

be sent, via U.S. mail, a postcard notice with a detachable claim form (postage prepaid), in the forms attached to the Agreement as Exhibits 1 and 2. *See James*, 2016 WL 6908118, at *2 (approving materially identical notice plan in wrong number TCPA class action).

Separately, Angeion will establish a dedicated settlement website through which class members can review relevant documents filed with this Court, review the question-and-answer notice (attached as Exhibit 4 to the Agreement), and submit claims.

In addition, Angeion will establish a toll-free phone number, through which class members can request additional information and have questions about the settlement answered. Finally, Angeion will institute an online notice program targeting potential class members.

This notice plan complies with Rule 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding class counsel's request for an award of attorneys' fees, costs, and expenses; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries and obtain additional information. Fed. R. Civ. P. 23(c)(2)(B); *Roundtree*, 2015 WL 5559461, at *1 ("The class notice provides reasonably adequate information about the nature of the action and the class settlement, and provides sufficient details for class members to determine whether to remain in the class or opt out. Accordingly, the form and content of the class notice are approved.").

In short, this notice plan ensures that class members' due process rights are amply protected and should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A).

**IV.    This Court should schedule a final fairness hearing.**

The last step in the settlement approval process is a final fairness hearing at which this Court may hear all evidence and argument necessary to make its final settlement evaluation. Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval. In addition, class members may be heard at this hearing. The Court will determine after the final fairness hearing whether to approve the settlement, and whether to enter a judgment and order of dismissal under Rule 23(e).

**Conclusion**

Mr. Williams respectfully requests that this Court preliminarily approve the settlement and enter the proposed order submitted by the parties, appoint him as class representative, and appoint Greenwald Davidson Radbil PLLC as class counsel.

**Local Rule 3.01(g) Certification**

Counsel for Mr. Williams conferred with counsel for Bluestem, and Bluestem does not oppose the requested relief.

Dated: November 21, 2018            */s/ Michael L. Greenwald*
                                    Michael L. Greenwald
                                    James L. Davidson
                                    Jesse S. Johnson
                                    GREENWALD DAVIDSON RADBIL PLLC
                                    5550 Glades Road, Suite 500
                                    Boca Raton, FL 33431
                                    Telephone: 561.826.5477
                                    Fax: 561.961.5684
                                    mgreenwald@gdrlawfirm.com
                                    jdavidson@gdrlawfirm.com
                                    jjohnson@gdrlawfirm.com

                                    Aaron D. Radbil
                                    GREENWALD DAVIDSON RADBIL PLLC
                                    106 E. 6th Street, Suite 913
                                    Austin, TX 78701
                                    Telephone:  512.322.3912

aradbil@gdrlawfirm.com

Counsel for Mr. Williams and the class

**Certificate of Service**

I certify that a copy of the foregoing was filed electronically on November 21, 2018, via

the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

/s/ Michael L. Greenwald
Michael L. Greenwald