UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

---------------------------------------- x
                                         :
WADDELL WILLIAMS, on behalf of himself   :
and others similarly situated,           :   Case No. 8:17-CV-01971-T-27AAS
                                         :
                    Plaintiff,           :
                                         :
         vs.                             :
                                         :
BLUESTEM BRANDS, INC.,                   :
                                         :
                    Defendant.           :
                                         :
---------------------------------------- x

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

i

## Table of Contents

Table of Contents ................................................................................................................................ ii

Introduction ........................................................................................................................................ 1

Summary of the Settlement ............................................................................................................... 2

Notice and Claims Administration .................................................................................................... 2

Argument ............................................................................................................................................ 4

I.      The settlement satisfies all requirements and merits approval. ......................................... 4

      A.      The parties negotiated the settlement at arm's length and with the assistance of a well-respected mediator. ................................................................ 5

      B.      The complexity, expense and likely duration of the litigation favors approval of the settlement. ........................................................................................ 6

      C.      The settlement falls well within the range of recovery for similar TCPA class actions. ............................................................................................................... 8

      D.      The parties reached the settlement after being fully apprised of the risks and uncertainties associated with it. ......................................................................... 9

      E.      Class counsel support the settlement as fair, reasonable, adequate, and in the best interests of Class Members. ...................................................................... 10

      F.      The lack of any objections to the settlement supports final approval. .................... 11

      G.      The settlement treats Class Members equitably. ..................................................... 11

II.     Distribution of notice satisfied due process requirements. ............................................... 12

Conclusion ....................................................................................................................................... 13

**Introduction**

This case arises from collections calls to wrong or reassigned cellular telephone numbers intended for Defendant Bluestem Brands, Inc.'s ("Bluestem") own customers. That is, Waddell Williams ("Plaintiff") alleges that Bluestem violated the Telephone Consumer Protection Act ("TCPA") by placing autodialed calls to cellular telephone numbers that were either wrong from the outset or reassigned from Bluestem customers to new cell phone subscribers or customary users, including Plaintiff. Bluestem denies any liability for the telephone calls at issue or that its practices violate the TCPA.

Following more than a year of contested litigation and as a result of mediation before the Hon. Diane M. Welsh (Ret.), the parties reached an agreement to resolve this class action. This Court preliminarily approved the settlement on April 2, 2019, authorizing the distribution of notice and claim forms to potential Class Members.[1] *Williams v. Bluestem Brands, Inc.*, No. 8:17-CV-1971-T-27AAS, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) (Whittemore, J.).

Since then, more than 15,500 Class Members submitted claims for their *pro rata* share of the settlement fund. After deducting attorneys' fees and expenses, and an incentive award to Plaintiff—which are subject to this Court's approval and which Plaintiff addresses in a separate filing—each participating Class Member will receive approximately $39.[2] This per-claimant recovery is in line with similar TCPA class action settlements that have garnered final approval.

---

[1]   The executed settlement agreement is found at Doc. 56-1 at 13-45. Capitalized terms herein have the same definitions as in the settlement agreement.

[2]   Class Members have until July 16, 2019 to submit claims. Should additional Class Members submit timely, valid claims, the per-claimant recovery will be adjusted accordingly.

Moreover, to date, only one Class Member has excluded herself from the settlement, while none have objected to any aspect of the settlement. Given this excellent result, and considering the favorable reaction from Class Members, Plaintiff respectfully requests that this Court finally approve the settlement, and enter a final judgment and order in the form agreed to by the parties.

Bluestem does not oppose this relief.

## Summary of the Settlement

The settlement agreement defines a class under Rule 23(b)(3) comprised of:

> All persons and entities throughout the United States (1) to whom Bluestem Brands, Inc. placed a call in connection with a Fingerhut, Gettington, or PayCheck Direct account, (2) directed to a number assigned to a cellular telephone service, (3) in connection with its efforts to collect an account balance, (4) via LiveVox, Inc.'s Quick Connect platform, (5) where Bluestem's records contain a notification of wrong phone, (6) from November 2, 2015 through July 8, 2018.

Participating class members who aver that they received wrong-number calls from Bluestem and are not Fingerhut, Gettington, or PayCheck Direct accountholders will receive a pro-rata share of the $1 million settlement fund (with class notice and administration costs up to $269,500 paid separately by Bluestem), after attorneys' fees and expenses are deducted. In exchange, Class Members will release their claims arising out of Bluestem's use of an automatic telephone dialing system ("ATDS") to place calls to their cellular telephones during the class period.

## Notice and Claims Administration

Angeion Group—the Court-appointed class administrator, *see Williams*, 2019 WL 1450090, at *5—delivered the Court-approved notice to Class Members in accordance with this Court's preliminary approval order. *See* Declaration of Denise L. Earle, attached as Exhibit A. The successful claims rate demonstrates not only the effectiveness of the notice, but also Class Members' satisfaction with the settlement.

2

*Direct Mail Notice*: After performing reverse telephone number look-ups on the telephone numbers provided to it by Bluestem as belonging to potential Class Members, Angeion mailed 258,870 postcards, which included summary notice of the settlement and a detachable claim form, to potential Class Members. See Ex. A, ¶¶ 5-7. Angeion re-mailed any notices returned undeliverable to forwarding addresses, where undeliverable postcards were returned with a forwarding address. *Id.*, ¶¶ 8-9. For undeliverable postcards returned without a forwarding address, Angeion performed advanced address searches to locate updated addresses, and re-mailed postcards to any updated addresses obtained. *Id.*, ¶ 9.

*Settlement Website*: Angeion established and maintains a website dedicated to the settlement—http://www.bluestemsettlement.com—that includes information pertinent to Class Members such as court filings, as well as answers to frequently asked questions. *Id.*, ¶ 11. Class Members were able to file claims via the settlement website. *Id.*, ¶¶ 11-12.

*Facebook*: Angeion disseminated notice on Facebook through the use of Facebook's custom audience tool. This allows Angeion to upload telephone numbers and email addresses associated with potential Class Members. Facebook matches those data points to accounts that utilize either a telephone number or email address as their primary account login and serves those potential Class Members with an additional form of notice. *Id.*, ¶ 10.

*Toll-Free Hotline*: Angeion established and maintains a toll-free telephone number—(888) 925-5234—for Class Members to obtain information about the settlement, and to submit claims. *Id.*, ¶ 14.

*Claims*: As of June 11, 2019, 15,897 people submitted claims. *Id.*, ¶ 17. 12,459 did so by mail, 114 did so by telephone, and 3,024 did so online. *Id.*

*Exclusions*: As of the date of Ms. Earle's declaration, no Class Members had excluded themselves from the settlement. *Id.*, ¶ 15. Since that time, one Class Member excluded herself.

*Objections*: To date, no Class Members have objected to the settlement, or any aspect of it. *Id.*, ¶ 16.

## Argument

### I.   The settlement satisfies all requirements and merits approval.

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement may be approved if it is "fair, reasonable, and adequate." *Narvaez v. Law Offices of Antonio Duarte, III, P.A.*, No. 8:14-CV-1646-T-33MAP, 2015 WL 4605756, at *2 (M.D. Fla. July 30, 2015) (Covington, J.).[3] "There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.").

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of Plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the

---

[3]   Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added.

4

opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement." *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Each relevant factor supports the conclusion that the settlement here is fundamentally fair, adequate, and reasonable.

> **A.    The parties negotiated the settlement at arm's length and with the assistance of a well-respected mediator.**

The parties negotiated the settlement through a respected mediator, the Hon. Diane M. Welsh (Ret.).[4] Because Judge Welsh was instrumental in assisting the parties, there is no doubt the parties negotiated the settlement at arm's length and absent fraud or collusion. *See* 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *see also, e.g.*, *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 8:14-CV-01182-CEH, 2015 WL 3776918, at *2 (M.D. Fla. June 17, 2015) (Honeywell, J.) ("The assistance of an experienced . . . class action mediator . . . reinforces that the Settlement Agreement is non-collusive."), *final approval granted*, 2015 WL 12843848 (M.D. Fla. Dec. 7, 2015); *Wilson v. Everbank*, No. 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (finding no evidence of fraud or collusion where the settlement was negotiated at arm's length, and where the mediation was overseen by a nationally renowned mediator); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) ("The Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith,

---

[4]    "Over the past 23 years, as a JAMS neutral and a United States Magistrate Judge, [Judge Welsh] has successfully resolved over 5000 matters, covering virtually every type of complex dispute. Specifically, Judge Welsh has extraordinary skill in resolving high-stakes multi-party commercial disputes, employment matters, catastrophic personal injury cases, class actions, mass torts and multi-district litigations (MDL's). She was recognized as a 2016-2018 'ADR Champion' by the National Law Journal." https://www.jamsadr.com/welsh/ (last visited May 30, 2019).

arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator[.]").

In addition, the parties' mediation occurred after written discovery and depositions of both parties, after the Court denied Bluestem's motion to stay this matter, and after the submission of class certification briefing and associated expert reports. As a result, the parties—and counsel with extensive experience in TCPA class litigation—were able to properly assess the strengths and weaknesses of their positions and evaluate the fairness of the settlement.

### B. The complexity, expense and likely duration of the litigation favors approval of the settlement.

As this Court noted in preliminarily approving the settlement, "[c]onsidering th[e] complexity, the difficulty of proof, the prospect of protracted litigation, including summary judgment motions and appeals, the expense of litigating the merits, and the attendant risks Plaintiff acknowledges, a relatively early compromise was appropriate." *Williams*, 2019 WL 1450090, at *3. So while Plaintiff believes strongly in his claims, by any objective assessment he faced significant hurdles to obtaining class-wide relief.

Among the obstacles to prevailing on his claims and those of the class were:

- The disputed questions regarding what constitutes an ATDS under the TCPA, and whether the dialing system used by Bluestem is an ATDS;

- The pendency of proceedings before the FCC, which could eliminate, or significantly curtail, the viability of wrong number TCPA claims, like those asserted by Plaintiff and Class Members;

- The pendency of challenges to the constitutionality of the TCPA, such as those then pending in the Fourth and Ninth Circuits;

- The significant risks in obtaining class certification, including hurdles related to the ascertainability of the class and the commonality and predominance requirements of Rule 23;

- Even had Plaintiff prevailed on the merits, Bluestem would assert that its robust TCPA safeguards made the prospect for the recovery of treble damages unlikely.

6

> Moreover, some courts view awards of aggregate, statutory damages with skepticism and reduce such awards on due process grounds. *See, e.g.*, *Aliano v. Joe Caputo & Sons—Algonquin, Inc.*, No. 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011)*;* and

- Plaintiff's and class counsel's concern about the risk of non-payment in the event of a favorable trial judgment.

More specifically, based on publicly available information, Plaintiff and undersigned counsel were concerned that Bluestem's financial position created a risk that, even if Plaintiff ultimately prevailed, the class could ultimately recover little. For instance, Moody's has twice downgraded Bluestem in the recent past.[5] Similarly, S&P Global provided negative ratings for Bluestem's creditworthiness.[6] Bluestem, however, maintains belief in its current financial position and long-term viability.

Given the foregoing, it is obvious that Plaintiff's likelihood of success in this case was, and remains, a real risk, separate and apart from the risk that exists in every case of losing at trial or on appeal. "Viewed in the context of the abundant risks presented in this case, the Settlement is reasonable," because the "[s]ettlement represents a reasonable discount given the risks of continued litigation." *In re BellSouth Corp. ERISA Litig.*, No. 1:02-CV-2440-JOF, 2006 WL 8431178, at *6 (N.D. Ga. Dec. 5, 2006); *see also Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (noting that the plaintiffs faced a "myriad of factual and legal problems" that

---

[5] *See* https://www.moodys.com/research/Moodys-revises-Bluestem-Brands-outlook-to-negative-Caa1-CFR-affirmed--PR_385797 (last visited May 30, 2019); *see also* https://www.moodys.com/research/Moodys-Downgrades-Bluestem-Brands-CFR-to-Caa1--PR_368723 (last visited May 30, 2019); https://www.cbsnews.com/news/after-sears-which-retailers-could-be-the-next-to-fall/ (last visited May 30, 2019).

[6] https://www.spratings.com/documents/20184/908557/US_CO_Event_Webcast_17JUL_Retail Debt/0ec628d5-aff4-40ed-94fd-c2c8fe991c45 (last visited May 30, 2019); *see also* https://www.usatoday.com/story/money/2017/12/20/here-26-retailers-and-apparel-companies-most-risk-2018/950328001/ (last visited May 30, 2019).

led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

### C. The settlement falls well within the range of recovery for similar TCPA class actions.

The settlement here—payment by Bluestem of a non-reversionary, all-cash fund of $1 million plus the costs of class notice and settlement administration up to $269,500—compares well on a per-class member basis with similar TCPA class action settlements that courts have recently approved.

More specifically, the settlement fund provides substantial monetary relief—approximately $39 to each participating Class Member. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—less than what participating Class Members likely will receive here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn. 2016) (approving a TCPA settlement that yielded $33.20 per claimant); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (approving a TCPA settlement that yielded $34.60 per claimant); *Rose v. Bank of Am. Corp.*, Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving TCPA class settlement where claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309352 (N.D. Cal. Mar. 31, 2014) (less than $50 per TCPA claimant); *Arthur v. Sallie Mae, Inc.*, 10–CV198–JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) ($20-$40 per participating class member); *cf. Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV, 2017 WL 9472860, at *7 (S.D. Fla. Nov. 20, 2017) (approving TCPA settlement awarding $4 or $15 voucher per class

member).

The settlement, therefore, falls well within the range of approved recoveries in TCPA class actions—"a range which recognizes the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Domestic Air Transp.*, 148 F.R.D. at 323; *see also id.* at 326 (A court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation.").

And this cash recovery is particularly relevant given the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit). In other words, the settlement provides Class Members real monetary relief that most would likely never have pursued on their own.

### D. The parties reached the settlement after being fully apprised of the risks and uncertainties associated with it.

Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1349. At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, the parties entered into the settlement only after they were fully apprised of the facts, risks, and obstacles involved with the possibility of continued litigation. Before mediating this matter, the parties exchanged discovery focused both on Plaintiff's individual claims and on those

9

of absent class members, conducted depositions of both parties, briefed a motion to stay, briefed a motion for class certification and associated expert reports, and briefed for settlement purposes the strengths and weaknesses of their respective positions.

As a result, the parties "conducted enough discovery to be able to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation" before negotiating the settlement. *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988). And further, the settlement was only consummated when the parties were well-informed regarding the strengths and weaknesses of their respective positions. *See id.* ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation."). Lastly, class counsel's assessment of the case was informed by their extensive experience in TCPA class actions.

### E. Class counsel support the settlement as fair, reasonable, adequate, and in the best interests of Class Members.

"In a case where experienced counsel represent the class, the Court absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 691 (N.D. Ga. 2001) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also In re Domestic Air Transp.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.").

Here, class counsel—whose qualifications include substantial experience with TCPA class actions[7]—firmly believe the settlement is fair, reasonable, and adequate, and in the best interests

---

[7]     *See* ECF No. 56-1 at 1-8.

of Class Members. Class counsel also believe the benefits of the settlement far outweigh the delay and considerable risk of proceeding to trial. *See generally Leverso*, 18 F.3d at 1530 n.6.

      **F.**    **The lack of any objections to the settlement supports final approval.**

As a result of the class notice, at the time of this filing—and with several weeks remaining until the close of the claims period—more than 15,500 persons submitted claims, while no Class Member objected to any aspect of the settlement. *See* Ex. A, ¶¶ 16-17. This favorable reaction supports approval of the settlement. *See, e.g.*, *Signorelli v. Utiliquest, LLC*, No. CIV508CV38OC10GRJ, 2008 WL 7825757, at *2 (M.D. Fla. July 25, 2008) (Hodges, J.) ("The Court further finds that the absence of any objections to the settlement and significant support for the settlement by the Settlement Classes supports final approval of this Settlement."); *Faught v. Am. Home Shield Corp.*, No. 2:07-CV-1928-RDP, 2010 WL 10959223, at *23 (N.D. Ala. Apr. 27, 2010), *aff'd*, 668 F.3d 1233 (11th Cir. 2011) ("The small number of opt-outs and objectors, along with the absence of any objections that have merit, militates in favor of approval of the Settlement."); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement.").

      **G.**    **The settlement treats Class Members equitably.**

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all Class Members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, each participating Class Member will receive an equal portion of the settlement fund after deducting attorneys' fees, costs, expenses, and an incentive award to Plaintiff. Thus, the

11

allocation of the settlement proceeds treats Class Members fairly and equitably. Moreover, each Class Member will provide the same release to Bluestem, further underscoring the equitable treatment of Class Members.

## II. Distribution of notice satisfied due process requirements.

"Rule 23 requires that notice to class members be the 'best notice practicable under the circumstances[.]'" *Lopez v. Hayes Robertson Grp., Inc.*, No. 1310004CIVMARTINEZGO, 2015 WL 5726940, at *6 (S.D. Fla. Sept. 29, 2015). But "even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (collecting cases).

Distribution of notice here certainly exceeded this minimum standard. In particular, Angeion used all reasonable efforts to provide direct mail notice to each potential Class Member. *See generally* Ex. A. And Angeion supplemented this direct mail notice with targeted Facebook advertisements, a dedicated settlement website, and toll-free phone number. *Id*.

As a result of this robust notice campaign, more than 92% of the records associated with potential Class Members were successfully matched with names and addresses and sent direct mail notice. The resulting claims rate of more than 8.5% is in excess of claims rates in other approved TCPA class action settlements, further supporting approval. *See, e.g.*, *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement); *Barani v. Wells Fargo Bank, N.A.*, No. 12-cv-02999-GPC-KSC, ECF No. 32 (S.D. Cal. Feb. 4, 2015) (approximately 1.2% claims rate); *Knuston v. Schwan's Home Serv.*, No. 12-cv-00964-GPCDHB, ECF No. 151 (S.D. Cal. Feb. 5, 2015) (approximately 1% claims rate); *Adams v. AllianceOne Receivables Management, Inc.*, No. 08-cv-00248, Doc. 137 (S.D. Cal. Sept. 28, 2012) (approximately 1% claims rate); *Kolinek v. Walgreen Co.*, 311 F.R.D.

483, 493 (N.D. Ill. 2015) (2.5% claims rate); *accord Markos*, 2017 WL 416425, at *4 (noting that a high claims rate, near 12%, suggests that a settlement is fair and reasonable).

In summary, the notice plan amply protected Class Members' due process rights.

## Conclusion

Plaintiff submits that the settlement constitutes an excellent result for Class Members. And for the foregoing reasons, Plaintiff respectfully requests that this Court approve the settlement, and enter a final judgment and order.

As noted, Bluestem does not oppose this relief.

Dated: June 14, 2019

*/s/ Michael L. Greenwald*
Michael L. Greenwald
James L. Davidson
Jesse S. Johnson
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, Florida 33487
Tel: (561) 826-5477
Fax: (561) 961-5684
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Aaron D. Radbil
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Phone: (512) 803-1578
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

Counsel for Plaintiff and class counsel

13

**Certificate of Service**

I certify that a copy of the foregoing was filed electronically on June 14, 2019, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

*/s/ Michael L. Greenwald*
Michael L. Greenwald
